IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCUS P.,[1]                                             No. 6:19-cv-0003-HZ

                Plaintiff,                      OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.


Katherine L. Eitenmiller
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

       Attorney for Plaintiff

Billy J. Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Katherine Watson
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Marcus P. brings this action seeking judicial review of the Commissioner's final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on January 7, 2015, alleging a disability onset date of March 22, 2014. Tr. 21.[2] His application was denied initially and on reconsideration. Tr. 149-59, 164-72.

On November 2, 2017, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 47-78. On March 7, 2018, the ALJ issued a written decision finding Plaintiff not disabled. Tr. 21-39. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on a shoulder injury, attention-deficit/hyperactivity disorder ("ADHD"), major depression, and learning disabilities. Tr. 269. At the time of the

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

alleged onset date, he was 22 years old. Tr. 38. He has a high school education and past relevant

work experience as a deliverer and cabinet assembler. Tr. 37-38.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases,

agency uses five-step procedure to determine disability). The claimant bears the ultimate burden

of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant

work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work,

the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts

to the Commissioner. In step five, the Commissioner must establish that the claimant can

perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If

the Commissioner meets his burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after his alleged onset date. Tr. 23.  Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: status post right hand fracture, subluxation of

right shoulder, neurodevelopmental disorder associated with prenatal alcohol exposure, ADHD,

learning disabilities, major depressive disorder, generalized anxiety disorder, bipolar disorder,

post-traumatic stress disorder ("PTSD"), and mixed substance abuse. *Id.* However, the ALJ

determined that Plaintiff's impairments did not meet or medically equal the severity of a listed

impairment. Tr. 24. At step four, the ALJ concluded that Plaintiff has the residual functional

capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the

following additional limitations:

> [L]ift and/or carry twenty pounds occasionally, ten pounds frequently, standing
> and/or walking for a total of more than six hours and sitting for a total of more than
> six hours in an eight-hour workday with normal breaks. No more than occasional
> push and/or pull with [the] right upper extremity; no more than occasional climbing
> of ramps and stairs, and no climbing of ladders ropes and scaffolds. Limited to no
> more than frequent stooping, kneeling, and crouching and no more than occasional
> crawling. No more than occasional reaching with the right upper extremity, both
> forward lateral reaching and overhead. He is capable of understanding and carrying
> out simple instructions and limited to cursory interaction with the general public.

Tr. 26. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 37-38. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as scaling machine operator, laminating machine off bearer, and ironer. Tr. 39. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discounting his subjective symptom testimony; (2) discounting the lay-witness statements; (3) giving reduced weight to the opinions of Plaintiff's treating and examining medical sources; and (4) failing to give sufficient reasons for rejecting

the Oregon Department of Human Service ("DHS")'s determination that Plaintiff is eligible for

Developmental Disability Services and requires support. The Court discusses each in turn.

## I.    Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ erred in discounting his subjective symptom testimony regarding

his inability to work due to making simple errors caused by his cognitive impairments and

anxiety. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal

relationship between the impairment and some level of symptoms, clear and convincing reasons

are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v.*

*Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is

malingering, "where the record includes objective medical evidence establishing that the

claimant suffers from an impairment that could reasonably produce the symptoms of which he

complains, an adverse credibility finding must be based on clear and convincing reasons")

(quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.

2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ

determines whether there is "objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if

the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ

must give specific, clear and convincing reasons in order to reject the claimant's testimony about

the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a

claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify evidence of malingering. Tr. 27. However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 22. The ALJ specifically discounted Plaintiff's symptom testimony for several reasons, including, amongst others, inconsistencies between his symptom testimony and his work history and activities of daily living ("ADLs").

**A.    Work History**

The ALJ found Plaintiff's assertion that he is incapable of working due to his psychological impairments inconsistent with his work history. An ALJ may discount a claimant's subjective symptom testimony when the alleged impairment is not the reason the claimant stopped working. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). An ALJ may also discount a claimant's allegations of disability when the claimant continues working and looking for work past the alleged disability onset date. *Carter v. Astrue*, 472 F. App'x 550, 552 (9th Cir. 2012) (plaintiff's part-time work after the alleged onset date was a valid basis to reject his symptom

testimony); *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *see also* 20 C.F.R. §§ 404.1571, 416.971 (noting post-disability onset date work activity "may show that [claimants] are able to do more work than [they] actually did").

Here, Plaintiff "admitted to working within the relevant period." Tr. 36. The ALJ specifically found:

> [Plaintiff] had four different jobs while in Portland in 2014 and was doing "medical marijuana stuff" [Tr. 452]. He also had a license to grow marijuana and had a delivery business [*Id*]. In June 2015, he said he had a new job but needed more hours [Tr. 490] and was interviewing for other jobs [Tr. 730-31]. He had a job in July 2015 and only left that job after two and half months because he was planning to move to Colorado with his girlfriend [Tr. 461]. Prior to that, he worked for a siding company but left that job after three months because it was too much on his right shoulder so he resigned [*Id*]. He had a job in September 2016 [Tr. 664]. He also had a job in 2017 as a delivery driver [Tr. 708]. He said his job was going well and he enjoyed his work and was being praised daily by his supervisor [Tr. 704]. However, he was in an accident, and had to undergo a drug test. He was positive for marijuana and was let go [Tr. 708]. Moreover, the claimant testified that he would still be at his delivery job from 2013 if he were not dating the owner's daughter, leaving to avoid problems with her family.
>
> He was also making plans to start a marijuana business and was talking about registering his business and getting vehicles [Tr. 445, 452]. He also said that he would be interested in some kind of vocational training in order to get a more meaningful job and would like to pursue postsecondary education at a community college [Tr. 600]. The claimant testified that he applied for Social Security Disability when he returned home from Philadelphia because he was not sure what he wanted to do and his mother wanted him to file.

Tr. 36-37.

Without citing any evidence to the contrary, Plaintiff asserts that his work history demonstrates that he is unable to sustain consistent employment due to his impairments. However, the ALJ findings concerning Plaintiff's work activity was based on a reasonable interpretation of substantial record evidence. Indeed, when providing an example of the simple errors he makes that prevent him from working, Plaintiff testified that he was unable to keep track of an order involving two to three different kinds of paint at his last job in 2017. Tr. 66.

The ALJ noted, however, that Plaintiff reported his supervisor was praising him daily and he only lost that job because he got into a car accident and failed a drug test, not because of his claimed limitations. Tr. 37, 704, 708. Accordingly, the Court finds the ALJ did not err. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, [a court] must defer to the Commissioner's decision.") (internal citations omitted). Plaintiff's post-alleged disability onset date work activity was a clear and convincing reason for discounting the alleged severity of his symptoms.

### B.    Activities of Daily Living

The ALJ also rejected Plaintiff's symptom testimony related to his mental health impairments on the basis of his ADLs. Contradiction with a claimant's ADLs is a clear and convincing reason for rejecting a claimant's symptom testimony where the activities meet the threshold for transferable work skills, or the activities contradict a claimant's other testimony. *Tommasetti*, 533 F.3d at 1039; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is an insufficient basis for rejecting a claimant's testimony. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (requiring the level of activity to be inconsistent with the claimant's alleged limitations).

Here, the ALJ found Plaintiff's claimed cognitive limitations were inconsistent with his ability to independently care for his personal needs, prepare simple meals, take medication on his own, care for and feed his dogs, and drive his girlfriend to work and help her take care of her two children every day. Tr. 36. The ALJ noted that Plaintiff "cared for [his girlfriend's] two children,

and his newborn daughter, on his own, on a daily basis through January 2017," acted as a caregiver for his grandparents during the weekends, and helped his mother care for her home by mowing the lawn, doing dishes, and sweeping and vacuuming. *Id.* The ALJ also noted that Plaintiff reported going out to eat, going to the park, watching movies, shopping in stores, watching sports and going on hikes with friends, reading about technology, and travelling by walking, driving a car, or using public transportation. *Id.* (citing Tr. 276-91, 613). The ALJ found Plaintiff's "ability to drive, safely, requires the ability to sit, use his upper extremities, and pay attention sufficiently to traverse the road safely." *Id.* The ALJ concluded that Plaintiff's allegations of disabling cognitive limitations were "inconsistent with his ability to care for two young children and a newborn on his own on a daily basis." *Id.*

Although the ALJ cited a robust list of contradictory ADLs, Plaintiff only addresses two of them. First, Plaintiff argues his mother had to help him administer his medications, and when she went out of town in March 2015 he got into a fight with his girlfriend, mixed Lorazepam with alcohol, started breaking furniture, threatened to kill himself, and injured his girlfriend and brother when they tried to intervene. Tr. 396, 401, 432; *see also* Tr. 732 (noting Plaintiff "was taking handfuls of Xanax while drinking and smoking marijuana"). He was taken to the emergency department and placed on a mental-health hold until he sobered up. Tr. 396, 432. When asked if his overdose was intentional, Plaintiff reported that he "was just trying to get high, but it wouldn't have bothered [him] if [he] died." Tr. 432. He reported that he was going to enroll in intensive outpatient substance abuse treatment (Tr. 453, 731) but there is no indication that he ever followed through with that plan.

The evidence cited by Plaintiff details that his mother was put in charge of regulating his Lorazepam—"a short term prescription . . . to help him to try to get off of marijuana"—due to

his history of substance abuse and "the high addiction potential for benzodiazepines[.]" Tr. 399. That Plaintiff's mother was put in charge of managing a short-term prescription to prevent him from abusing it does not undermine the ALJ's finding. *Cf.* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism or drug addiction [is] a contributing factor material to the Commissioner's determination that the individual is disabled."). Plaintiff's documented history of struggling with addiction, while unfortunate, in no way detracts from the ALJ's finding that Plaintiff's alleged inability to work due to making simple errors is belied by his activities demonstrating that he is capable of understanding and carrying out simple instructions.

Second, citing *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017), Plaintiff argues the ALJ failed to develop the record pertaining to his childcare activities. In *Trevizo*, the ALJ's rejection of the claimant's alleged physical limitations on the basis of her childcare activities was erroneous because the record contained "no details as to what [her] regular childcare activities involved," and the "only childcare responsibilities identified at the hearing were one-off events[.]" *Id.* Here, the ALJ specifically found Plaintiff's ability to care for two young children and an infant while his girlfriend was at work and act as the primary caregiver to the children for several months while his girlfriend was incarcerated and limited to supervised visits with the children was inconsistent with Plaintiff's alleged psychological limitations. Unlike *Trevizo*, where there was no evidence of what the claimant's childcare activities involved that could undermine the claimant's physical limitations, Plaintiff creating a routine for the children, taking them to school, "caring for the kids all day and getting them to bed at night," and taking "the children to all their doctor and dentist appointments" contradicts Plaintiff's assertion that he is so

limited by his psychological impairments that he cannot understand and carry out simple instructions. Tr. 24, 552, 662, 727.

Plaintiff contends that "the ALJ entirely declined to address evidence that DHS found [him] unfit to parent and took custody of the children, indicating that he in fact *could not* parent well despite his impairments." Pl.'s Br. 20, ECF 13 (citing Tr. 673, 68) (emphasis original). Thus, argues Plaintiff, "the record documents that [his] daily functioning was significantly impaired consistent with his allegations of disability." *Id.* Contrary to Plaintiff's assertion, the ALJ did note that Plaintiff's child was placed in his mother's care by DHS. Tr. 31-32.

More importantly, the record details that DHS became involved with the children in April 2016, when Plaintiff and his girlfriend got into an argument and she stabbed him. Tr. 588, 615, 628, 710. After the children were subsequently removed from his care in January 2017, Plaintiff was required to attend domestic violence and parenting classes, undergo random drug testing, and participate in substance abuse treatment. Tr. 68, 673. The record indicates that Plaintiff lost custody of the children due to issues of domestic violence and substance abuse, not because of his claimed organizational and memory deficits. Therefore, the ALJ's finding that Plaintiff's childcare activities demonstrated he was not as severely limited as alleged is unaffected by Plaintiff losing custody of the children for reasons unrelated to those impairments.

As mentioned, Plaintiff does not challenge the ALJ's findings concerning his other ADLs, such as his ability to "pay attention sufficiently to traverse the road safely," act as "a caregiver for his grandparents every weekend," and perform various chores around his mother's home. Tr. 36. Those ADLs are also inconsistent with Plaintiff's assertion that he cannot follow limited instructions because he makes simple mistakes due to his anxiety and psychological limitations.

Finally, the Court need not address Plaintiff's arguments that the ALJ erred in rejecting his testimony based on his normal mental status examinations, receipt of effective and conservative treatment, and periods of non-compliance with treatment. Even assuming those reasons were erroneous, Plaintiff's work activities and ADLs are sufficiently clear and convincing reasons for discounting his testimony. Therefore, any error would be harmless and would not suffice as grounds for reversing the Commissioner's decision. *Carmickle*, 533 F.3d at 1162 (noting an ALJ's error is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions"). Accordingly, the ALJ's treatment of Plaintiff's symptom testimony will not be disturbed.

## II.    Lay Witness Statements

Plaintiff argues the ALJ erred in affording "only some weight" to the lay witness statements submitted by his girlfriend and friend. Tr. 35, 284-91, 363-64. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

The Commissioner concedes the ALJ erred in evaluating the lay witness statements. However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121-22. Plaintiff does not dispute that the lay witness statements are substantially similar to his symptom allegations. As discussed, the ALJ's reasons for

discounting Plaintiff's testimony were clear and convincing. Because the ALJ's reasoning applies with equal force to the lay witness statements, the ALJ's error was harmless.

## III.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in assigning reduced weight to the medical opinions of Drs. Guastadisegni, Colasurdo, and Bear. Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). More weight should typically be given to an examining physician than to a non-examining physician. *Id.* at 1012. "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (quoting *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)).[3] When determining how much weight to give a medical opinion, the ALJ should consider the nature and extent of the physician's examining or treating relationship with the claimant, supportability of the opinion, consistency with the record as a whole, the specialization of the physician, and other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

### A.    Dr. Guastadisegni

Plaintiff first argues the ALJ failed to give legally sufficient reasons for assigning reduced weight to examining psychologist Dr. Paul Guastadisegni's medical opinion. Dr. Guastadisegni conducted a neuropsychological evaluation of Plaintiff in September 2017. Tr. 706. He administered several cognitive tests, reviewed medical records, and conducted a clinical

---

[3] The opinions of Drs. Guastadisegni (Tr. 715-16), Colasurdo (Tr. 624, 628, 630, 644, 649, 651, 656, 658, 677, 684, 698, 718-19), and Bear (Tr. 555) are contradicted by the opinions of the State agency psychological consultants (Tr. 91-93, 106-08). Therefore, the ALJ was required to provide specific and legitimate reasons for giving reduced weight to their medical opinions.

interview of Plaintiff. *Id.* Dr. Guastadisegni observed that Plaintiff was pleasant and cooperative, presented with some pressured and rambled speech, was tangential in thought at times, and put forth good effort on testing. Tr. 710. He noted Plaintiff scored in the average to low average range on intelligence testing. *Id.* The doctor detailed that Plaintiff struggled with executive functioning and memory issues and would benefit from a stable home environment. Tr. 714-15.

Dr. Guastadisegni diagnosed Plaintiff with neurocognitive and neurodevelopmental disorders associated with prenatal exposure to drugs and alcohol; cannabis use disorder, in early full remission; history of bipolar disorder; and unspecified anxiety disorder. Tr. 716. He noted that Plaintiff needed the security of disability benefits because he has struggled to maintain stable employment and "would require adaptive accommodations in any work environment." Tr. 715. Dr. Guastadisegni opined that Plaintiff's "day should include many breaks, and time to process" because "he may shut down and withdraw" under pressure. Tr. 716. The doctor further opined that Plaintiff has "some immediate memory problems" and "problems in adapting and generalizing information," "needs information provided to him in small amounts in a contextual format" to facilitate comprehension, and requires structure and guidance when completing complex tasks. *Id.*

In giving Dr. Guastadisegni's opinion "partial weight," the ALJ first noted that his assessment was based on a one-time examination. Tr. 33. The ALJ properly rejected the opinion to the extent Dr. Guastadisegni stated that Plaintiff is permanently disabled, because the ultimate determination of disability is an issue reserved to the Commissioner. *Id.*; 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Plaintiff argues the ALJ erred by failing to give legally sufficient reasons for finding Dr. Guastadisegni's opinion was "not entirely consistent with the record." Tr. 33. An ALJ must consider a medical opinion's consistency with the record as a

whole in determining what weight to afford it. *Orn*, 495 F.3d at 631; 20 C.F.R.

§§ 404.1527(c)(4), 416.927(c)(4). "[C]onflict between treatment notes and a[] provider's

opinions may constitute an adequate reason to discredit the opinion[.]" *Ghanim v. Colvin*, 763

F.3d 1154, 1161 (9th Cir. 2014).

Here, the ALJ noted that an evaluation from July 2006 indicated that Plaintiff's "overall

cognitive score was within normal limits," which undermines Dr. Guastadisegni's assessment of

disabling cognitive limitations since birth. Tr. 33, 551, 715-16. More persuasively, the ALJ noted

Plaintiff's mental status examinations throughout the relevant period showed generally normal

cognitive findings, including normal recent and remote memory and improved, fair, or intact

concentration and attention. Tr. 33 (citing Tr. 373, 377, 381, 385, 447, 454, 491, 500, 507, 614,

621, 627, 634, 641, 648, 655, 674, 682, 688, 705).[4] Plaintiff argues the normal mental status

examinations occurred in the context of ongoing mood instability and occasional violent

ideation. However, Dr. Guastadisegni did not base his recommended limitations on Plaintiff's

mood instability or occasional violent thoughts. Instead, he opined that Plaintiff's restrictions

stem from his difficulty processing information, poor memory, and limited attention span caused

by his neurocognitive disorders. Tr. 715-16. The generally normal mental status examinations

are substantial evidence indicating that Plaintiff is more functional than determined by Dr.

Guastadisegni. Accordingly, the ALJ did not err in finding the opinion was inconsistent with the

longitudinal record.

The ALJ also found Dr. Guastadisegni's opinion was inconsistent with Plaintiff's work

activity during the relevant period and his acknowledgment that he lost some of those jobs for

---

[4] As Plaintiff correctly notes, one of the treatment records (Tr. 705) cited by the ALJ does not
document mental status examination findings. This error, however, does not undermine the other
19 treatment records cited by the ALJ.

reasons unrelated to disability. Tr. 33. An ALJ may reject a medical opinion that is inconsistent

with the claimant's work activity. *Valentine*, 574 F.3d at 692-93 (9th Cir. 2009); *see also*

*Morgan v. Comm'r*, 169 F.3d 595, 601-02 (9th Cir. 1999) (an ALJ may assign less weight to a

doctor's opinion when it is inconsistent with the claimant's activities). As discussed, the ALJ

reasonably found Plaintiff's inability to sustain a job was due to reasons other than disability.

Plaintiff's preferred interpretation of the record does not establish error. *Batson*, 359 F.3d at

1193. Accordingly, Plaintiff's work activity was a specific and legitimate reason for giving less

weight to Dr. Guastadisegni's opinion.

    **B.**    **Dr. Colasurdo**

       Plaintiff next argues the ALJ's reasons for giving reduced weight to treating psychiatrist

Dr. Sue Colasurdo's opinion were erroneous. Dr. Colasurdo started treating Plaintiff in 2006

when he was a teenager. Tr. 718. He returned to her care for medication management and

psychotherapy in April 2015. Tr. 452. In various treatment notes, Dr. Colasurdo stated that

Plaintiff was "clearly disabled" by his mood disorder. Tr. 624, 630, 644, 651, 658, 677, 684, 698.

She also stated that Plaintiff has struggled with work due to attention and memory issues and that

his unorganized thinking and bipolar disorder precludes work. Tr. 628, 642, 649, 656. The ALJ

accorded those statements "little weight" because the issue of disability is reserved to the

Commissioner and the statements were conclusory and failed to set forth specific functional

limitations. The Court finds the ALJ's reasoning was valid. *See Meanel v. Apfel*, 172 F.3d 1111,

1114 (9th Cir. 1999) (explaining that a doctor's "mere statement that [the claimant] experienced

*some* diminution in her concentration skills falls short of an informed opinion") (emphasis

original); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the

opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); 20 C.F.R. §§ 404.1527(d), 416.927(d).

Further, in September 2017 letter, Dr. Colasurdo noted that Plaintiff's diagnoses included fetal alcohol syndrome, learning disabilities, ADHD, bipolar disorder, and PTSD. Tr. 718. His symptoms included mood instability, mood elevation, irritability, paranoia, aggression, anxiety, poor sleep, and memory difficulties. *Id.* Dr. Colasurdo opined that Plaintiff's symptoms prevented him from working outside of a supported work setting. Tr. 718-19. She further opined that: (1) Plaintiff could be a danger to others if un-medicated; (2) his learning disabilities prevented him from learning new tasks without support and his distractibility prevented him from completing rote tasks; and (3) he decompensated frequently and would would miss work at least several times a month due to mental health issues. Tr. 719. Dr. Colasurdo concluded that Plaintiff had been disabled since 2006, and that his level of disability intensified significantly when he became manic in 2015. *Id.*

The ALJ found Dr. Colasurdo's opinion warranted little weight because it was inconsistent with Plaintiff's work activity during the relevant period and evidence that he stopped working for reasons other than his impairments; the longitudinal record of mental status examinations demonstrating normal recent and remote memory and intact concentration and attention; and Plaintiff's "wide range" of ADLs, specifically his ability to care "for three young children on his own on a daily basis, including a newborn." Tr. 34. Plaintiff rehashes his previous arguments as to why those findings were erroneous; however, as discussed, the ALJ did not err. Accordingly, Plaintiff's work activity, mental status examinations, and ADLs were specific and legitimate reasons for disregarding Dr. Colasurdo's opinion in favor of an RFC limiting Plaintiff to simple instructions and only cursory interaction with the public. Tr. 26.

### C.      Dr. Bear

Plaintiff argues the ALJ erred by rejecting Dr. Ami Bear's assessment of Plaintiff. Dr.

Bear examined Plaintiff in October 2015 to evaluate his adaptive functioning and provided him

with a referral to vocational rehabilitation and adult developmental disability services. Tr. 551-

56. The ALJ gave "little weight" to Dr. Bear's statement that Plaintiff was "impaired in some

sub-domains [and] borderline-impaired overall" in adaptive skills because she "failed to set forth

any functional limitations." Tr. 34, 555.

As Plaintiff correctly notes, Dr. Bear's statement that Plaintiff was borderline impaired in

adaptive skills was not a medical opinion. Tr. 555.[5] Rather, it was the result of Plaintiff's self-

reporting on the ABAS-II, "a rating scale measure of adaptive behavior skills." Tr. 554.

Although the ALJ mistook the test results for Dr. Bear's opinion, an "ALJ is 'not required to

discuss every piece of evidence,'" especially "'evidence that is neither significant nor

probative.'" *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting *Howard ex rel. Wolff

v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). An ALJ may properly reject a doctor's report

that does not assign any specific limitations on the claimant. *Turner v. Comm'r of Soc. Sec.*, 613

F.3d 1217, 1223 (9th Cir. 2010).

Absent specificity, Dr. Bear's recitation of Plaintiff's results on the ABAS-II

demonstrates nothing more than Plaintiff is borderline impaired in adaptive functioning.

However, the ALJ never disputed that Plaintiff is impaired by his psychological impairments.

Indeed, the ALJ found that he had "moderate" limitations in several areas of functioning at step

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable
medical sources that reflect judgments about the nature and severity of your impairment(s),
including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s),
and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

two of the sequential analysis, and she limited him to simple work and cursory interaction with the public in the RFC formulation. Tr. 24-26. Thus, the ABAS-II results are neither significant nor probative. Therefore, the ALJ did not err in rejecting evidence that did not need to be discussed in the first place.[6]

## IV.    Developmental Disability Services

Plaintiff argues the ALJ erred in her treatment of the evidence related to his eligibility for Developmental Disability Services ("DDS"). The record contains a February 2016 letter from Oregon DHS informing Plaintiff that he was found eligible for DDS because he has a neurodevelopmental disorder associated with prenatal alcohol exposure. Tr. 573. The ALJ afforded little weight to the DHS notice. An ALJ is "not bound by disability decisions by other governmental and nongovernmental agencies," such as Oregon DHS, but "should explain the consideration given to these decisions." SSR 06-3p, 2006 WL 2329939, at *7 (Aug. 9, 2006). The ALJ met that requirement by noting that she "fully considered" the notice of eligibility and found it was inconsistent with the "objective medical evidence and the other opinion evidence of record." Tr. 35.

In addition, Plaintiff's DHS case manager Devon Orr submitted a letter in October 2017, in which he stated that Plaintiff "needs support in areas of activities of daily living (transportation, meal preparation, laundry and housekeeping and money management/shopping) [and] also needs support in communication, medication management and health management supports." Tr. 736. Under the applicable regulations, Mr. Orr is considered an "other source." 20

---

[6] In addition, Plaintiff fails to explain how the ALJ's rejection of the test results was harmful. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009).

C.F.R. §§ 404.1513(d), 416.913(d) (2013). As is the case with lay witness testimony, the ALJ

may discount the opinions of "other sources" by providing specific and germane reasons

supported by substantial evidence. *Molina*, 674 F.3d 1104, 1111 (9th Cir. 2012). Here, the ALJ

gave Mr. Orr's letter "partial weight" because the "opinion is vague and conclusory as he fails to

set forth specific functional limitations." Tr. 34. As the Commissioner notes, "Mr. Orr did not

specify the degree to which Plaintiff would be limited in his activities, communication, or health

management," nor did he provide any indication of the type of support Plaintiff would need in

those areas. Def.'s Resp. 15, ECF 14. Mr. Orr's letter was therefore unhelpful, and the ALJ's

reason for discounting it was specific and germane. *See* Meanel, 172 F.3d at 1114 (9th Cir. 1999)

(finding the ALJ properly rejected an opinion that "failed to explain the extent or significance"

of the claimant's limitations); *Thomas*, 278 F.3d at 957 (noting an ALJ need not accept an

opinion that is vague and conclusory). Accordingly, the ALJ did not err in discounting the evidence

related to Plaintiff's eligibility for DDS.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:   September 29, 2020   .

MARCO A. HERNÁNDEZ
United States District Judge